UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENNETH NICHOLSON,

                            Plaintiff,

                                                                                    Case # 13-CV-6072-FPG

v.

                                                                                    DECISION & ORDER

BRIAN FISCHER, et al.,
                            Defendants.
_____

## INTRODUCTION

*Pro se* Plaintiff Kenneth Nicholson ("Plaintiff") filed a Second Amended Complaint on August 20, 2013, naming 22 defendants and seeking relief under 42 U.S.C. § 1983. ECF No. 38.[1] Defendants filed a Motion for Summary Judgment on December 11, 2013. ECF No. 46. Plaintiff subsequently agreed to dismiss all claims and defendants except for Claim #1 of his Second Amended Complaint against four employees of Wende Correctional Facility: Correction Officer James Johnson ("Johnson"), Correction Officer Jason Barrett ("Barrett"), Deputy Superintendent of Security Thomas J. Sticht ("Sticht"), and Correction Lieutenant G. Lucas ("Lucas").[2] *See* ECF No. 62. For the reasons stated below, Defendants' Motion is granted in part and denied in part.

---

[1] The original Complaint in this action was filed on February 12, 2013. ECF No. 1. Plaintiff then filed an Amended Complaint (ECF No. 4), Supplemental Complaint (ECF No. 22), and another Amended Complaint (ECF No. 26). The Court treats Plaintiff's Second Amended Complaint (ECF No. 38) as the operative complaint. *See Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 23 (2d Cir. 2012); *Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 68 (2d Cir. 1998) ("an amended complaint ordinarily supersedes the original, and renders it of no legal effect").

[2] In his Response to Defendants' Motion for Summary Judgment, Plaintiff states that he "concurs with defendants that claims against all other defendants can be dismissed but claims raised in claim #1 count(s) count one and count two must go forward." ECF No. 53, at 9. The defendants listed in claim one, counts one and two are Brian Fischer, Dale Artus, Thomas J. Sticht, James Johnson, and Jason Barrett. In a later-filed Motion to Amend, however, Plaintiff stated: "I concur with the counsel representing defendants all claims and defendants can and shall be dismissed except: defendants – Johnson; Lucas; Sticht; Barrett; claim 1." ECF No. 62. Plaintiff's Motion to Amend was denied without prejudice, ECF No. 64, and this Court took notice of Plaintiff's most recent concession while ruling on Plaintiff's motion for a preliminary injunction. ECF No. 65.

## BACKGROUND[3]

On January 15, 2013, Plaintiff arrived at Wende Correctional Facility from Sing Sing Correctional Facility. Three months earlier, at Sing Sing, Plaintiff had been sliced across the face by members of the Bloods gang and had been placed in the Involuntary Protective Custody ("IPC") Unit. According to Plaintiff, the central office at New York State Department of Corrections and Community Supervision ("DOCCS") had Plaintiff classified under IPC confinement until January 20, 2013.

Upon his arrival to Wende, Plaintiff was classified as Quarantine Status, which according to Plaintiff "is designed to keep inmates isolated when the[y] first arrive to a facility to determine if they have any enemies." However, Plaintiff was immediately placed among the general population in a double bunk cell with inmate Michael Williams ("Williams"). Williams is a known member of the Bloods gang. Plaintiff was never interviewed by Sticht or any other security personnel at Wende before he was placed in the cell with Williams.

On January 16, 2013, Williams returned from lunch and "told [Plaintiff] to go tell the correction officer that [Plaintiff] cannot live in his cell or else he would blow [Plaintiff's] face off." Plaintiff immediately left the cell and reported this to Barrett, fully informing him of the situation. Barrett locked Plaintiff in a shower stall and notified Johnson, who was the area supervisor that day. Johnson arrived and went directly to speak to Williams. Johnson asked Williams what was going to happen if Plaintiff was put back in the cell with Williams, to which Williams responded "that it would be what it is going to be, that he would handle his business." As a result, Williams was moved out of the cell to another location across the corridor. Plaintiff was not offered protective custody, and neither Johnson nor Barrett made any notation that there

---

[3] The following allegations are taken from Plaintiff's Second Amended Complaint (ECF No. 38).

2

were issues between Plaintiff and Williams or Plaintiff and the Bloods gang. Plaintiff later overheard Johnson state to Barrett and other officers that "they should have put us back in the cell together and let us beat the 'shit' out of each other and the best man keeps the cell."

On January 23, 2013, Plaintiff, Williams, and 19 other inmates were left unsupervised in an orientation classroom within Wende. Williams and another inmate named Martinez walked up behind Plaintiff and started stabbing him with a homemade knife. The assault lasted five to seven minutes. Plaintiff was stabbed nine times and suffered puncture wounds on both of his hands, his right shoulder, and the back of his head. Plaintiff was eventually able to get away and alert a correction officer, who was posted more than 25 feet away. The officer "called a level one," several other officers responded to the incident, and Plaintiff was taken to Erie County Medical Center for treatment.

On or about February 16, 2013, Lucas interviewed Plaintiff about his grievance regarding this incident. During the interview, Lucas attempted to bribe Plaintiff in order to drop his grievance.[4] Lucas also later forged investigation reports regarding the incident.

## LEGAL STANDARD

Although Defendants label their Motion as one for summary judgment on the docket, within the Motion itself Defendants describe it as a "motion to dismiss and motion for summary judgment in lieu of an answer" and purport to rely both on Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure. ECF No. 46. Rule 56 states that a party moving for summary judgment must identify "each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56. Defendants have failed to do so.

---

[4] Plaintiff writes in his Second Amended Complaint that Lucas "tried to bribe to sign of such grievance." ECF No. 38, at 17. Construing the Complaint liberally in order to raise the strongest argument it suggests, the Court interprets Plaintiff to allege Lucas bribed him to drop his grievance.

3

None of the facts listed in the Statement of Undisputed Facts attached to Defendants' Motion relate to Plaintiff's claims against Johnson, Barrett, Sticht, and Lucas, the only remaining defendants. ECF No. 46-2. The substance of Defendants' arguments with respect to each remaining defendant is that Plaintiff has failed to state a claim upon which relief could be granted, and Defendants do not cite anything other than Plaintiff's Second Amended Complaint in making those arguments. ECF No. 46-3. The Court therefore treats Defendants' Motion, as it relates to Plaintiff's remaining claims, as a motion to dismiss pursuant to Rule 12(b)(6). No material outside of the pleadings will be considered.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Because Plaintiff is proceeding *pro se*, the Court will "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). "Even in a *pro se* case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

## DISCUSSION

### 1. Barrett and Johnson

Plaintiff alleges Barrett and Johnson violated the Eighth Amendment when they failed to protect him from Williams.[5]

A prison official's failure to protect an inmate from foreseeable harm may violate the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To sustain a failure to protect claim, an inmate must demonstrate that (1) he was incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials were deliberately indifferent to that risk. *Randolph v. Griffin*, No. 12-CV-745S, 2014 WL 3548967, at *6 (W.D.N.Y. July 17, 2014) (citing *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)). In order to establish deliberate indifference, an inmate must show both that the official knew that the inmate faced a substantial risk of harm, and that the official disregarded that risk by failing to take reasonable measures to abate the harm. *Randolph*, 2014 WL 3548967, at *6.

Defendants raise several arguments in favor of dismissing Plaintiff's claims against Barrett and Johnson. First, Defendants argue that Plaintiff has not sufficiently alleged deliberate indifference because Barrett and Johnson did listen to Plaintiff's concerns, investigate the situation by talking to Williams, and remove Williams from Plaintiff's cell. An officer who takes reasonable steps to protect an inmate from harm may be shielded from liability. *Farmer*, 511 U.S. at 844. However, an officer is not automatically absolved from liability simply because he or she did *something* in response to a foreseeable threat. *See Hutchinson v. McCabee*, 168 F. Supp. 2d 101, 103 (S.D.N.Y. 2001) (denying defendants' post-trial motion for judgment as a matter of law, where plaintiff was attacked by two inmates and defendant investigated the

---

[5] In the relevant heading of his Second Amended Complaint, Plaintiff also includes "Assault" in addition to "Cruel and Unusual Punishment" and "Failure to Protect." ECF No. 38, at 14. However, Plaintiff does not allege that Barrett or Johnson ever actually assaulted him. Plaintiff therefore fails to state a claim for assault.

5

situation and identified one of the attackers, but returned plaintiff to his cell and did not offer him protective custody even though the other attacker was never identified).

Here, Plaintiff has alleged that he fully informed Barrett and Johnson of the threat posed by Williams and the Bloods gang. Although Johnson did talk to Williams, Williams did not deny that he would assault Plaintiff when given the chance. Williams was moved to another cell, but other than that neither Johnson nor Barrett made any effort to ensure that Plaintiff and Williams would remain separated, or that Plaintiff would be protected from other members of the Bloods gang. Plaintiff was not offered protective custody, and neither Johnson nor Barrett made any notation of the conflict between Plaintiff and Williams or Plaintiff and the Bloods gang. Given those well-pleaded allegations, Plaintiff has sufficiently stated a failure to protect claim against Johnson and Barrett. *Toliver v. Colvin*, 12-CV-00227A(F), 2014 WL 1660609, at *7 (W.D.N.Y. Apr. 24, 2014) ("The failure to remove an inmate from the general prison population to protect the inmate from physical harm states a claim for deliberate indifference to the prisoner's safety in violation of the Eighth and Fourteenth Amendments.").

Second, Defendants argue that Plaintiff "fails to show any connection between the unsupervised classroom and defendants Barrett and Johnson." But the connection between Barrett and Johnson and the unsupervised classroom is clear from the face of Plaintiff's Complaint: because Barrett and Johnson failed to take any steps to ensure that Plaintiff remained separated from Williams or other members of the Bloods gang, Plaintiff was left in an unsupervised classroom with Williams and ultimately stabbed nine times.

Third, Defendants make an argument that Johnson's alleged remark about leaving Plaintiff in a cell with Williams cannot be a basis for liability against Johnson because "allegations of verbal harassment, standing alone, are not redressable under Section 1983." This argument misconstrues the crux of Plaintiff's allegation, which is that Johnson was deliberately

6

indifferent to Plaintiff's safety. The fact that Johnson told others that Williams should be left alone with Plaintiff, if proven to be true, would definitely support a finding that Johnson was deliberately indifferent. The fact that "verbal harassment" is not a stand-alone constitutional violation is irrelevant.

Because Plaintiff has sufficiently stated a failure to protect claim against Barrett and Johnson, Defendants' motion to dismiss is denied.

## 2. Sticht

Plaintiff also asserts a failure to protect claim against Sticht. Defendants' only argument in favor of dismissing Plaintiff's claim against Sticht is that Plaintiff has failed to describe any substantive involvement by Sticht in the events at issue.

In a § 1983 claim, supervisor defendants may not be held vicariously liable for a subordinate's constitutional violation via the theory of *respondeat superior*. *Monell v. Dep't of Social Services of New York City*, 436 U.S. 658, 691 (1978). In other words, a supervisor may only be liable for "his or her own misconduct." *Iqbal*, 556 U.S. at 677. In *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), the Second Circuit set forth five ways in which a supervisor defendant's personal involvement in a constitutional violation may subject him or her to liability: (1) direct participation in the alleged constitutional violation; (2) failure to remedy the wrong after being informed of the violation through a report or appeal; (3) creation or continuance of a policy or custom under which the unconstitutional practices occurred; (4) gross negligence in supervising the subordinates who committed the wrongful acts; or (5) deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. Here, Plaintiff has alleged that Sticht is the Deputy Superintendent of Security at Wende. The relevant DOCCS regulation makes the Deputy Superintendent of Security directly responsible for the selection of inmates for double-cell housing. 7 N.Y.C.R.R. § 1701.5(a).

According to that regulation, "the deputy superintendent of security or designee" must conduct a risk assessment, using the criteria set forth in 7 N.Y.C.R.R. § 1701.5(b)-(d), to determine each inmate's eligibility, suitability, and compatibility for double-cell housing. *Id.* Inmates currently in involuntary protective custody are specifically identified as "victim prone" under § 1701.5(c)(4)(i) and therefore excluded from double-cell housing. 7 N.Y.C.R.R. § 1701.5(c)(4)(i). Plaintiff alleges he was under IPC confinement at Sing Sing when he was transferred to Wende, and that he remained classified under IPC in the DOCCS central office until January 20, 2013. However, when Plaintiff arrived at Wende he was placed in a double bunk cell with Williams, a known member of the Bloods gang. Neither Sticht nor any other security official at Wende ever interviewed Plaintiff or made the risk assessment that is required under § 1701.5(a). Under those circumstances, Plaintiff has alleged sufficient involvement by Sticht to state a claim against him for failure to protect. *Toliver*, 2014 WL 1660609, at *7-8 (holding that Plaintiff had established likelihood of success on the merits of his failure to protect claim against the Deputy Superintendent of Security for Five Points Correctional Facility, where Plaintiff was "victim prone" under § 1701.5(c)(4)(i) but was not granted protective custody and was forced to remain among the general prison population).

### 3. Lucas

Plaintiff asserts a due process claim against Lucas.[6] Defendants argue that Plaintiff fails to state a claim for relief against Lucas because Plaintiff has not alleged a constitutional violation. I agree.

Plaintiff's allegations against Lucas relate solely to how Plaintiff's grievance was handled. According to Plaintiff, Lucas attempted to bribe Plaintiff to drop his grievance and

---

[6] Plaintiff also includes "Cruel and Unusual Punishment" in the heading of his claim against Lucas. However, even construing the Second Amended Complaint liberally in order to raise the strongest arguments it suggests, Plaintiff does not allege an Eighth Amendment claim against Lucas.

later forged investigation reports. Although these allegations are certainly serious, they do not implicate the Due Process Clause of the Fourteenth Amendment. "Prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment." *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003); *see also Tafari v. McCarthy*, 714 F. Supp. 2d 317, 344 (N.D.N.Y. 2010).

Of course, as is the case here, the substance of an inmate's grievance may relate to a violation of constitutional rights. An inadequate grievance process may also, under certain circumstances, excuse an inmate's failure to exhaust administrative remedies before pursuing an action for damages under § 1983 or estop defendants from arguing non-exhaustion. *See Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004); *Ziemba v. Wezner*, 366 F.3d 161, 163-64 (2d Cir. 2004). But a procedural inadequacy in a prison's internal grievance process is not, in and of itself, a constitutional violation giving rise to its own action for damages under § 1983. Plaintiff's claim against Lucas is therefore dismissed.

## CONCLUSION

For the reasons stated above, Defendants' Motion (ECF No. 46) is GRANTED IN PART and DENIED IN PART. The Motion is granted with respect to Plaintiff's due process claim against Lucas, and denied with respect to Plaintiff's failure to protect claims against Barrett, Johnson, and Sticht.

IT IS SO ORDERED.

Dated: November 5, 2015
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court